LIVERPOOL & L. & G. INS. CO. (AKIN v.).
See Case No. 121.

---

## Case No. 8,405.

### The LIVERPOOL HERO.

#### [2 Gall. 184.] 1

Circuit Court, D. Massachusetts. Oct. Term, 1814.

CUSTOMS DUTIES—PRIZE—SHARE OF CAPTURING CREW.

Prize goods, brought in by ships of war of the United States, are liable to the payment of duties, as to the moiety belonging to the officers and crew of the capturing ship; but no duties are payable on the moiety belonging to the United

1 [Reported by John Gallison, Esq.]

States; but the whole of that moiety belongs to the navy pension fund.

[Appeal from the district court of the United States for the district of Massachu-setts.]

The property in controversy in this case [The Liverpool Hero, and cargo, Simpson, master], having been condemned in the dis-trict court, as enemy's property, and good and lawful prize to the United States' frigate Chesapeake, Samuel Evans, Esq., command-er, and decreed to be distributed, one moiety to the United States, and the other to the officers and crew of said frigate, according to law, after deducting the duties, due on the importation thereof into the United States, an appeal was interposed by Commo-dore Decatur, who, as flag officer, was en-titled to one twentieth part of one moiety of the proceeds, from so much of the decree as ordered a deduction of duties. The fol-lowing were assigned as the reasons of ap-peal: (1) "That goods captured from an ene-my, and brought into the United States, by a public armed ship of the United States, are not made subject to duties by law." (2) "That the officers and crew of a public armed ship of the United States are entitled, in all cases, to at least one half of the pro-ceeds of the prizes, which they captured and have condemned; which by the decree ap-pealed from is not given to the said officers and crew of said frigate." In order to ex-plain some parts of the argument, it may be proper to remark, that the goods, to which the question related were removed from the prize, in consequence of her leaky condition, and were brought into port on board of the frigate.

Selfridge, for appellant.

It is only in consequence of the express provisions of the constitution and laws of the United States, that duties are in any case payable on the importation of merchandise. Without these it would be the right of every individual to import goods, free from any tax or charge to the government. It follows, that no duties can be claimed, when the im-portation is made under circumstances, and in a manner, clearly not contemplated by the law. There are many provisions in the law regulating the collection of duties,—4 Laws [Folwell's Ed.] 305; 1 Story's Laws, 573 [1 Stat. 627],—which prove, that public armed ships were not intended to be sub-ject to its operation. By section 62, bonds are required to be given to the United States, for securing the duties. Can the United States give bond to themselves? By section 50, permits are to be given before goods are landed. If they should be landed without permit from a public ship, against whom would the information lie? By section 53, an inspector may be put on board of every vessel on her arrival. Can this apply to pub-lic ships? Endless would be the absurdities and embarrassments, to which such a con-

struction would lead. It is, therefore, evident, that duties were intended to be imposed on those goods only, which are imported in the regular course of trade. It is equally clear, from the law regulating the navy, that prize goods, captured by public ships, were not considered to be subject to duties. By this act, prizes of equal or superior force are to become, upon condemnation, the sole property of the captors. They would not become their sole property, if duties are to be paid. By the same act, when the prize is of inferior force, it is to be divided equally between the United States and the captors. Is it not absurd, to call that an equal division, by which the United States take first one half as duties, and then one half of the residue? There are many other considerations, which support this view of the law: (1) The goods, when captured, belong until condemnation to the United States, who cannot secure or pay duties to themselves. (2) The effect of such a requisition would be, that captors, instead of bringing in, would destroy every prize, by which means the calamities of war would be increased, and the United States would be deprived of their moiety. (3) It was not intended to add to the revenue by the proceeds of prizes, but, on the contrary, the moiety accruing to the United States is appropriated to form a fund for the encouragement of merit and relief of disabled seamen. 5 Laws [Smith's Ed.] 108, 123; 1 Story's Laws, 761, 768 [2 Stat. 45, 51]. (4) By this means privateers would be encouraged at the expense of the navy, which could not be the intention of congress. In remitting the double duties to privateers, the intention probably was to prefer them to merchant vessels; but the navy would be favored more than either. If, however, goods captured by public ships are, notwithstanding these reasons, held to be subject to duties, it is submitted with confidence, that duties are to be charged upon the moiety only.

Blake, Dist. Atty., for the United States.

My official duty compels me, in this case, to a course entirely different from that, which my feelings would suggest. I should rejoice, if the laws were such, as to exempt from duties prizes made by the navy. But I am apprehensive, that it is otherwise, and that the legislature only can afford relief. The misfortune seems to be, that the revenue laws are calculated for a state of peace, and cannot, without amendment, be made to suit with the exigencies of war. The act, by which duties are imposed, has not been adverted to by the counsel for the appellant. He has confined his remarks to the act regulating the collection of duties. By the first act,—1 Laws [Folwell's Ed.] 248; 1 Story's Laws, 159 [1 Stat. 180],—all goods imported into the United States are made subject to duties, unless specially excepted. It is true, that all the regulations for enforcing the payment of duties appear to relate to common and ordinary importations only, and to be inapplicable to public ships. The reason is obvious. It was not anticipated, that goods would ever be imported in a public armed ship. But the late acts of congress show that prize goods are not supposed to be excepted from the revenue laws. By a statute recently passed, the double duties on prize goods were remitted, and in the law concerning letters of marque, &c.,—11 Laws [Weightman's Ed.] 238, c. 107, § 13, S. A.; 2 Story's Laws, 1261 [2 Stat. 759],—owners and commanders of privateers are made subject to the same penalties and forfeitures for a violation of the revenue laws, as attach to merchant vessels in the like cases. No real difficulty exists, as to the manner of entering the goods and securing the duties. All this may be done by the prize master. It is admitted, that such a regulation, as that the captain shall be subject to a penalty, if he does not make report, cannot, without absurdity, be extended to public ships. But it does not, by any means, follow, that because some parts of the law are necessarily confined to merchant vessels, all its other parts are to be construed with the same restriction. The transhipment of the goods from the prize to the frigate was an irregularity, to be excused only by the necessity of the case. No exemption can be claimed on this ground, but the cause must stand upon the same footing, as if the goods had arrived on board of the Liverpool Hero, in the custody of a prize master.

STORY, Circuit Justice. The single question is, whether prize goods imported into the United States by a national ship, under the commission and authority of the United States, are liable to the payment of duties? It is very correctly argued, that no duties are payable on goods imported into the United States, unless expressly provided for by statute. By the act of the 10th of August, 1790, c. 39, 1 Laws [Folwell's Ed.] 248 [1 Stat. 180], certain duties are laid upon all merchandise not therein excepted, which shall be brought into the United States from any foreign port or place; and by the act of the 1st of July, 1812, c. 112 (11 Laws [Weightman's Ed.] 260), one hundred per centum is added to the then permanent duties. It is very clear. that goods belonging to the United States, and imported on their own account, in their own ships, are not within the purview of either of these statutes. Independent of the general doctrine, that the sovereign is not restrained by a statute, unless named in it, it is impossible to contend, that either these acts, or the acts made to enforce the collection of duties,—March 2, 1799, c. 128; 4 Laws [Folwell's Ed.] 305 [1 Stat. 627],—can in common sense apply to the United States. It would be absurd to suppose, that the United States should pay duties to themselves; much more that they

should give bond to themselves for duties, or for drawback, or should incur the forfeiture of their own goods by landing them without a permit.

By the general law of prize, all captures, made by the public armed ships of a nation, belong to the sovereign. By the prize law of the United States, after condemnation as prize, a moiety of the proceeds is distributed among the officers and crew, if the captured vessel be of inferior force, and the whole, if of equal or superior force, to the capturing ship. Feb. 23, 1800, c. 33; 5 Laws [Smith's Ed.] 108, c. 33 [2 Stat. 45]. Still, however, the whole property is proceeded against in behalf of the United States, and no title vests in the captors, except to a distributive share of the proceeds after condemnation. Until such final adjudication, the captors have no interest, which the court can properly notice for any purpose whatsoever. The condemnation is, in terms, a condemnation to the United States; but it enures for the benefit of the captors, and is distributed according to the provisions of law. The Elsebe, 5 C. Rob. Adm. 173. It follows from these considerations, that prize goods imported into the United States in public ships, under the authority of the United States, are to be deemed an importation by the United States, and not by the captors. None of the rules, therefore, that apply to the ordinary importations of merchants, could govern in such a case.

If the present case, therefore, stood upon the general principles of law, I should have no difficulty in acceding to the argument of the appellant, that these prize goods were not liable to the payment of duties. But it seems to me, that the present case is directly within the purview of a statute, which was not adverted to by the counsel on either side at the argument. I allude to the prize act of the 26th of June, 1812, c. 107. 11 Laws [Weightman's Ed.] 238, c. 107 [2 Stat. 759]. That act (section 14), after exempting all prize goods captured from the enemy by private armed vessels, or by the vessels of war and revenue of the United States, from the operation of the non-importation acts, declares, that all such goods, when imported into the United States, shall pay the same duties, to be secured and collected in the same manner, and under the same regulations, as the like goods, if imported in vessels of the United States, from any foreign port or place, in the ordinary course of trade, are or may at the time be liable to pay. However incongruous, and I had almost said impracticable, it may be, to transfer the ordinary regulations of the revenue to prize causes, the intention of the legislature to make prize goods, imported in public ships, liable to duties, is sufficiently apparent in this language. I pretend not to solve, though I can readily foresee, the great difficulties, presented by this novel provision. Admitting that duties are payable on such prize

goods; by whom are they to be secured, and in what manner, and under what regulations? These questions are sufficiently embarrassing, but connected with another, viz. whether the whole goods are to pay duties, or the moiety belonging to the United States is to be exempted, they involve the mind in singular perplexity. If the payment of duties had been confined to that portion of such prize goods, which vests in the officers and crew, it might be possible to construe the act, as authorizing the security of the duties by them. But as to the portion belonging to the United States, it is difficult, as I have already stated, to conceive how the United States can either pay or secure the duties to themselves. It is further to be considered, that this portion is pledged by the United States, as a fund for the payment of pensions to the navy, and that a construction, which would render it liable to the deduction of duties, would greatly diminish the amount devoted to this most meritorious purpose. I do not think, therefore, such a construction ought lightly to be admitted.

My opinion accordingly is, though I confess it is not unattended with difficulties, that duties are, in no event, to be deducted from the moiety belonging to the United States, but the same is wholly to accrue to the navy fund, and that the other moiety, belonging to the officers and crew, is subject to duties. I shall direct the decree of the district court to be conformed to this opinion.

"If goods are taken as lawful prize upon the sea, and imported or brought into an English port, these prize goods shall pay customs inward; and accordingly it hath been resolved." Hale on the Customs; Harg. Law Tracts, 214; Id. 224.